# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GLENDON G. GRIFFITH, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04 C 7269 |
| ) | |
| ) | Judge Blanche M. Manning |
| NORTHEAST ILLINOIS REGIONAL ) | |
| COMMUTER RAILROAD CORP., ) | Magistrate Judge Geraldine Soat Brown |
|     Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, Magistrate Judge

Before the court is a motion filed by plaintiff Glendon Griffith ("Griffith") for reconsideration of the January 5, 2006 Order striking Plaintiff's Rule 26(a)(2) Disclosure. For the reasons set forth below, Griffith's Motion for Reconsideration [dkt 20] is granted to the extent it moves the court to reconsider the grounds of the order granting the motion to strike. However, on reconsideration, defendant's motion to strike [dkt 23] is granted on independent grounds.

## BACKGROUND

On June 27, 2005, a schedule was set for the completion of expert discovery. [Dkt 12.] Griffith's Rule 26 (a)(2) disclosures and reports were to be served by September 15, 2005 with the depositions of his experts and treating professionals to be completed by October 15, 2005. (*Id.*) On October 11, 2005, Griffith was granted until November 1, 2005 to serve his Rule 26(a)(2) disclosures

1

and reports and until December 2, 2005 for the depositions of his experts and treating professionals. [Dkt 20.]

On November 3, 2005, Griffith served on defendant Northeast Illinois Regional Commuter Railroad Corporation ("Metra") a document titled "Plaintiff's Disclosure and Physician's Report Pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure" ("Griffith's Disclosure" or "Disclosure"), which stated in its entirety:

> The Plaintiff, Glendon Griffith, by counsel, hereby discloses Dr. Spiro Stamelos as a witness pursuant to Federal Rule of Civil Procedure 26(a)(2), a treating medical professional of whom Plaintiff intends to ask questions under Federal Rules of Evidence 702, 703 or 705.
>
> Pursuant to *Federal Rule of Civil Procedure 26(a)(2)(B),* Dr. Stamelos's qualifications are disclosed in his c.v. attached as Exhibit 1 to Exhibit A (the transcript report).
>
> Pursuant to *Federal Rule of Civil Procedure 26(a)(2)(B)*, Dr. Stamelos's opinions are disclosed in *the attached question and answer transcript* (Exhibit A).
>
> Medical records have been previously either transmitted to and/or subpoenaed by Defendant's counsel, Dr. Stamelos's status as a treater having been previously disclosed in discovery. Further, Dr. Stamelos's compensation for the report was $337.50 (½ of his $675.00 per hour deposition fee), as well as payments by Metra or its insurer for treatment of Plaintiff. Finally, as a treating physician, Dr. Stamelos does not have a list of depositions. Although FRCP 26(a)(2) would not seem to require the creation of a non-extant document, we have requested Plaintiff's doctor's office to compile one. This disclosure will be so supplemented when received.

(Metra's Mot. Strike, Ex. A (emphasis added).) Apparently, on October 13, 2005, Griffith's counsel had questioned Dr. Spiro Stamelos under oath in the presence of a court reporter, and the transcript of that questioning was attached to the Disclosure. (*Id.*) Also attached was Dr. Stamelos' curriculum vitae. (*Id.*)

Metra filed its motion to strike Plaintiff's Rule 26 Disclosure on December 2, 2005. After

2

both parties briefed the issues and presented their arguments, the motion to strike Plaintiff's Rule 26 Disclosure was granted on January 5, 2006. [Dkt 28.] The reasons for that decision were stated on the record. (*See* Metra's Resp. Recons., Ex. 1, Tr. Jan. 5, 2006.) [Dkt 31.] In summary, Griffith had argued that Dr. Stamelos is not required to provide an expert's report meeting the requirements of Fed. R. Civ. P. 26(a)(2)(B) because Dr. Stamelos is Griffith's treating physician. The motion to strike was granted because the record before the court did not establish that Dr. Stamelos is, in fact, Griffith's treating physician. (*Id.*)

Griffith requested and was allowed an opportunity to file the current motion for reconsideration. Griffith now provides certain medical records with his motion to establish that Dr. Stamelos is a treating physician. (Pl.'s Mot. Recons., Ex. A.) [Dkt 29.] The medical records include a New Patient Evaluation summarizing Dr.Stamelos' impressions of Griffith at his first appointment on May 19, 2005. (*Id.*) In that summary Dr. Stamelos states that Griffith came for a second opinion for the treatment of chronic back pain and "a new phenomenon" that Griffith experienced as a result of an injury at work on July 29, 2004. (*Id.*) Dr. Stamelos ordered additional testing, including a MRI and EMG, prescribed medication, and referred Griffith to another physician for further evaluation. (*Id.*)

## ANALYSIS

### I. Motion for Reconsideration

"Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Publishers Resource, Inc. v. Walker-Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985). Metra argues that the motion for reconsideration should be

denied because Griffith could have provided the medical records supporting his argument that Dr. Stamelos was his treating physician prior to the January 5, 2006 ruling. (Metra's Resp. Recons. at 3-4). Griffith argues that he did not provide those medical records in his original response because Metra never questioned Dr. Stamelos' status as a treating physician. (Pl.'s Mot. Recons. at 1.)

Although Griffith's initial response to the motion to strike was premised on an incorrect assumption that Dr. Stamelos' status as a treating physician had been established as a matter of record, the documents presented with the motion for reconsideration are sufficient to support Griffith's position that Dr. Stamelos can be considered one of Griffith's treating physicians. Griffith's motion for reconsideration is granted to the extent it moves the court to reconsider the grounds of the order granting the motion to strike. The court will consider the issue of whether the Disclosure is sufficient under Rule 26(a)(2), even if Dr. Stamelos is one of Griffith's treating physicians.

## II.   Motion to Strike

### A.   The requirement of a Rule 26(a)(2)(B) report

Fed. R. Civ. P. 26(a)(2) requires parties to disclose, at a time set by the court or in the alternative by the rule, the identity of any person who may be used at trial to present testimony under Rules 702, 703 or 705 of the Federal Rules of Evidence. Fed. R. Civ. P. 26(a)(2)(A), (C). Subsection (a)(2)(B) of Rule 26 imposes an additional requirement relating to any witness who is retained or specially employed to present expert testimony; such a witness must provide a written

report setting forth, *inter alia*, the opinions to be offered and the basis therefor.[1]

In *Musser v. Gentiva Health Servs.*, 356 F.3d 751 (7th Cir. 2004), the Seventh Circuit eliminated any doubt as to whether expert testimony by a treating physician is subject to disclosure pursuant to Rule 26(a)(2). The Seventh Circuit affirmed summary judgment for a defendant following the district court's decision to exclude expert testimony by the plaintiff's treating physician because the plaintiff's counsel failed to serve a Rule 26(a)(2) disclosure regarding that physician. *Id.* at 754, 757-58.

Griffith argues that his Disclosure is sufficient under Rule 26(a)(2) because it disclosed Dr. Stamelos as a treating physician who would provided testimony under Rules 702, 703 and 705, and that Dr. Stamelos is is not required to prepare a Rule 26(a)(2)(B) report because he is Griffith's treating physician. (Pl.'s Resp. Mot. Strike at 2.) [Dkt 26.] That argument is somewhat at odds with the Disclosure itself, which describes the transcript and curriculum vitae as being served "[p]ursuant to Federal Rule of Civil Procedure 26(a)(2)(B)." (Metra's Mot. Strike, Ex. A, Disclosure at 1.)

---

[1] Specifically, Rule 26(a)(2)(B) provides:

Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Fed. R. Civ. P. 26(a)(2)(B).

Notwithstanding, Griffith now interprets *Musser* as holding that a treating physician is not required to provide a report. (Pl.'s Resp. Mot. Strike at 3.) However, that is not true. The court in *Musser* declined to "reach the disputed issue of whether an individual who serves in the capacity of 'treating physician' (or any analogous position) may nonetheless be required to submit a report under Rule 26(a)(2)(B)." 356 F.3d at 758 n. 3. The Seventh Circuit observed that "[i]t is clear that there is some expert testimony in the nature of the treating physician's testimony that does not require a report. But some district courts have suggested that if the Rule 26(a)(2)(A) testimony exceeds the scope of treatment and ventures into more general expert opinion testimony, a report may be necessary." *Id.* However, the court concluded that it was not necessary to reach that issue in the *Musser* case. *Id.*

After considering decisions on both sides of the "disputed question," this court previously held that when the testimony of a treating physician goes beyond the scope of treatment, observation, and diagnosis, and includes opinions on causation, prognosis, or the future impact of the injury, the treating physician must provide a report satisfying the requirements of Rule 26(a)(2)(B). *Sowell v. Burlington N. & Santa Fe Ry. Co.*, 2004 WL 2812090 at *6 (N.D. Ill. Dec. 7, 2004).

The circumstances of this case do not provide a reason to change that conclusion. In fact, this case illustrates why a Rule 26(a)(2)(B) report is required when a treating physician provides expert testimony as to causation, prognosis or future disability.

Griffith intends Dr. Stamelos to testify to the opinions disclosed in the transcript of October 13, 2005. (Metra's Mot. Strike, Ex. A, Disclosure at 1.) That twelve-page transcript consists almost entirely of leading questions posed by Griffith's attorney, and Dr. Stamelos' response to those questions. One of the opinions stated by Dr. Stamelos is that "[i]f [Griffith] continues this present work, . . . I believe that this man will have to have surgery to work any job. Or he will have to quit

6

working altogether because the condition will become very, very disabling." (*Id.* at Tr. Oct. 13, 2005 at 8.)

That opinion is likely intended to form a significant part of Griffith's claim for damages. However, Griffith's Disclosure, even when supplemented by the medical records submitted with the motion for reconsideration, provides virtually no information about the basis for that opinion. The medical records show that Griffith first came to Dr. Stamelos in May 2005, almost ten months after the occurrence at issue here. (Pl.'s Mot. Recons., Ex. A at 1.) Griffith brought to the initial consultation the results of an MRI that was taken almost two months after the occurrence. (*Id.*) Dr. Stamelos did not personally witness the occurrence, so his knowledge of the circumstances of the occurrence and any resulting injury is based on Griffith's description after the fact and after the filing of this lawsuit. The medical records include a "progress note" dated August 9, 2005, presumably by Dr. Stamelos, as well as some prescriptions. (*Id.* at 9, 2, 10.) The records also include a form signed in Dr. Stamelos' name and dated October 17, 2005, with a check mark in the box labeled "Employee/student can perform regular duties/school activities." (*Id.* at 11.) The records contain an evaluation dated November 15, 2005 by Dr. John Sarantopoulos, to whom Dr. Stamelos apparently referred Griffith, and some results of tests done on that date. (*Id.* at 13-16.) Notably, Dr. Sarantopoulos' tests and evaluation were done more than a month after Dr. Stamelos rendered his opinions in response to Griffith's attorney's questions, so they could not have formed a basis of Dr. Stamelos' opinions.[2]

The Disclosure reveals no basis for Dr. Stamelos' opinion that if Griffith continues his

---

[2] Significantly, Dr. Sarantopoulos' evaluation and tests were done after the second deadline had passed for Griffith's expert disclosures and after Griffith served the disclosure at issue here.

present work, his condition will become "very, very disabling." Dr. Stamelos' notes show that Griffith said he was a "car-man" for Metra. (*Id.* at 1.) There is no description of the duties required of that position. Dr. Stamelos' curriculum vitae shows nothing that would provide any basis for him to know what Griffith's job as a car-man requires. Apparently, the only foundation for Dr. Stamelos' opinion regarding Griffith's present work and its impact on his future disability is the hypothetical posed by Griffith's attorney.[3] As far as this record discloses, Dr. Stamelos has no way of knowing whether that hypothetical bears any resemblance to Griffith's actual work duties as a car-man.

The lack of any apparent foundation for the type of opinions Dr. Stamelos expressed is a problem not only for the opposing party, Metra, but also for the court. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), the Supreme Court emphasized that the federal trial judge has a special obligation to act as a "gatekeeper" to screen out purported scientific expert testimony that is not both relevant and reliable. In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-48 (1999), the Court held that the same standard applies to all expert testimony. Whether the proposed expert seeks to base his testimony on professional studies or entirely on personal experience, the expert must employ the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. *Id.* at 152. Thus, the court as "gatekeeper" has a duty to exclude

---

[3] Griffith's attorney asked Dr. Stamelos:

Doctor, assuming that this man's work activities require him to, bend, stoop, kneel, squat, and lift weight in excess of 50 pounds and that he has to do this on a continuous repetitive basis during the course of his work shift each and every day, is that going to have an effect on the underlying condition, which is now a symptomatic condition, that being the spondylitic condition that is now a pain component as well as the discogenic condition that he has at L4-L5?

(Metra's Mot. Strike, Ex. A, Tr. Oct. 13, 2005 at 5-6.)

8

testimony in the guise of expert opinion that does not meet the standards of Fed. R. Evid. 702. (*Id.*) Rule 702 requires that such testimony be based on sufficient facts or data, be the product of reliable principles and methods, and result from the witness' reliable application of the principles and methods to the facts of the case.

When a treating physician testifies about his observation, diagnosis and treatment of a patient, the physician is testifying about what he saw and did and why he did it, even though the physician's treatment and his testimony about that treatment are based on his specialized knowledge and training. As expressed by the Seventh Circuit in *Musser,* a treating physician is "providing testimony because of [his] involvement in the facts of the case . . . ." 356 F.3d at 757. When a treating physician limits his testimony to his observation, diagnosis and treatment, there is no need for a Rule 26(a)(2)(B) report. In contrast, when a treating physician opines as to causation, prognosis or future disability, the physician is going beyond what he saw and did and why he did it. He is going beyond his personal involvement in the facts of the case and giving an opinion formed because there is a lawsuit. Often that opinion relies on information not part of the physician's personal knowledge or professional training, as demonstrated by Dr. Stamelos' opinion about the future impact of Griffith's present work, which requires information about the work duties of a car-man.

This distinction is further reinforced by looking to the reasons behind the requirement of an expert's report. One of the reasons why Rule 26(a)(2)(B) was amended in 1993 to require a detailed report was dissatisfaction with "sketchy and vague" expert disclosures:

> The information disclosed under the former rule in answering interrogatories about the "substance" of expert testimony was frequently so sketchy and vague that it rarely dispensed with the need to depose the expert and often was even of little help in preparing for a deposition of the witness . . . .

> [T]he report, which is intended to set forth the substance of the direct examination, should be written in a manner that reflects the testimony to be given by the witness and it must be signed by the witness.

Advisory Committee Notes, 1993 Amendments to Rule 26(a)(2). When a treating physician's testimony is limited to his observation, diagnosis and treatment, the medical records provide a significant amount of information about the physician's likely testimony. However, the medical records alone provide little or no information about any opinions the physician may render regarding what caused the injury, or whether the plaintiff will be unable to work in the future. For example, in this case, Dr. Stamelos' treatment notes do not express the opinions that he gave in response to Griffith's attorney's questions. A Rule 26(a)(2)(A) disclosure, which requires only the identity of the person providing expert testimony, even when supplemented by the medical records, would provide no disclosure of those opinions. That is actually less information than the "sketchy and vague" information that the Advisory Committee criticized.

When an issue like causation is not disputed, for example, when an accident results in the loss of a limb, there really is no need for expert testimony on that issue. In many cases, however, causation, prognosis and future disability are critical, hotly disputed issues, and ones on which the plaintiff has the burden of proof. When those issues are disputed, in order to allow the opposing party to explore, and the court ultimately to determine, whether the proposed testimony on those issues meets the standards of Fed. R. Evid. 702, the proposed expert witness, including a treating physician, must provide the information required by Fed. R. Civ. P. 26(a)(2)(B).

That does not mean that a treating physician cannot testify at trial; if the physician has been disclosed pursuant to Rule 26(a)(2)(A), the physician may testify as to the nature and extent of the injury he observed and diagnosed, and the treatment that he rendered for that injury. However,

without a report satisfying the requirements of Rule 26(a)(2)(B), the treating physician cannot testify as to causation, prognosis or future disability. In extraordinary circumstances, where requiring an expert's report from a treating physician would work undue hardship, a party can move for relief from the report requirement to prevent an unjust result. Nothing in this record suggests that is the case here.

Griffith argues that the case is assigned to District Judge Manning, who in a previous decision denied a motion in limine to exclude testimony by treating physicians who did not provide a Rule 26(a)(2)(B) report. *Osuji v. City of Chicago*, 2005 WL 1799277 at *6 (N.D. Ill. July 26, 2005) (Manning, J.). Judge Manning stated that because the doctors in that case were not retained or specially employed to provide expert testimony, an expert report under Rule 26(a)(2)(B) was not required. *Id.* However, that ruling was part of a decision to excuse as "harmless error" the plaintiff's failure to make any Rule 26(a)(2) disclosure of the treating doctors at all. *Id.* at *7. The opinion does not detail the testimony at issue, but notes that it related to the doctors' treatment of the plaintiff, including some discussion of whether the plaintiff's condition was caused or aggravated by stress. *Id.* at *6. Given the nature of the issues in *Osuji*, this court does not view that ruling as precluding this decision.

### B. Griffith's Disclosure

In a sense, Griffith's Disclosure is actually a tacit admission that a Rule 26(a)(2)(A) disclosure of Dr. Stamelos' identity and the expectation that he is to render expert testimony would not fairly disclose the scope of the opinions about which Griffith anticipates Dr. Stamelos will testify. Thus, Griffith's attorney undertook the October 13, 2005 questioning of Dr. Stamelos before

11

a court reporter, as some type of quasi-report. However, there is no basis in the Federal Rules for such a quasi-report. The Disclosure, even including the transcript and the medical records, does not satisfy the requirements of Rule 26(a)(2)(B). The Disclosure is not a "report" as required by that Rule. The transcript consists almost entirely of Griffith's counsel asking leading questions and Dr. Stamelos answering those questions. By no stretch of the imagination can that be considered a "report prepared by the witness." As discussed above, some of Dr. Stamelos' opinions are based on hypothetical questions presented by Griffith's attorney, without any data or other information to lay any factual foundation for those hypothetical questions. Additionally, Dr. Stamelos' answers fail to explain the basis for his opinions. It is well established that an expert's report must contain more than mere conclusions. *See* Fed. R. Civ. P. 26(a)(2)(B); *see also Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 n. 6 (7th Cir. 1998); *Minasian v. Standard Chartered Bank, PLC*, 109 F.3d 1212, 1216 (7th Cir. 1997) (finding that an expert's report that does nothing to substantiate the expert's opinion is "worthless" and inadmissible). A foundationless, leading question and answer transcript cannot be accepted as a "report prepared by the witness" pursuant to Rule 26(a)(2)(B). Griffith's Disclosure does not satisfy the requirements of Rule 26(a)(2)(B) and is stricken.

This decision does not preclude Dr. Stamelos from testifying. He may testify as to his observation, diagnosis and treatment of Griffith. However, Dr. Stamelos may not testify about causation of the injury, prognosis, degree of permanency, or future disability unless he prepares and serves a report complying with Rule 26(a)(2)(B). Because Griffith's current Disclosure is insufficient, Metra's motion is granted and the Disclosure is stricken. Whether Griffith will be given additional time to serve a Rule 26(a)(2)(B) report will be discussed at the status hearing set for this matter on February 23, 2006.

## CONCLUSION

For the foregoing reasons, Griffith's Motion for Reconsideration is granted to the extent it moves the court to reconsider the grounds of its earlier order. However, on reconsideration, Metra's motion to strike Plaintiff's Rule 26 Disclosure is granted on independent grounds.

IT IS SO ORDERED.

Geraldine Soat Brown
United States Magistrate Judge

February 16, 2006